IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MALCOLM T. CADELL,              :
    Plaintiff,                 :
                               :
    v.                         :        CIVIL ACTION NO. 26-CV-3599
                               :
55TH & PINE POLICE             :
DISTRICT, *et al.*,            :
    Defendants.                :

MEMORANDUM

MCHUGH, J.                                                    JULY 20, 2026

*Pro se* Plaintiff Malcolm T. Cadell brings this civil action, naming three Defendants: the "55th & Pine Police District," Norristown State Hospital, and unnamed "Isis" or "Ice" Agents. Cadell also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Cadell's Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 1) and dismiss the Complaint (ECF No. 2) on statutory screening pursuant to 28 U.S.C. § 1915.

I.      FACTUAL ALLEGATIONS[1]

Mr. Cadell's Complaint refers to three apparently separate events concerning each of the named Defendants. First, as to the "55th & Pine Police District," he alleges that in 2016 he "was illegally arrested," then "sat in the back of a sweltering hot police car for over an hour," after which an unnamed officer "tried to shove [his] head/face into a toilet full of feces." (Compl. at 4.) He alleges that he "filed a verbal complaint," was transported to the hospital for a "neck

---

[1] The facts set forth in this Memorandum are taken from Cadell's Complaint (ECF No. 2). The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system. Grammar, spelling, and punctuation errors are cleaned up where necessary. Additionally, the Court includes facts reflected in publicly available state court records, of which this Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

injury," and was "handcuffed to a hospital bed and was forcibly stuck with a catheter," causing him to pass out. (*Id.*) When he was taken to the Curran-Fromhold Correctional Facility, he told officers he was a Christian, then was "stripped naked in front of inmates and thrown into a cell of [four] Muslim men," where he was "physically assaulted," and then he was "thrown into solitary confinement." (*Id.*) The Court notes that publicly available dockets indicate that Cadell was arrested in December 2016 and later pleaded guilty to charges of trespass and contempt for violating a protective order. *See Commonwealth v. Cadell*, No. CP-51-0000205-2017 (C.P. Phila.)

Second, as to Norristown State Hospital, Cadell alleges that "for years [he has] been kidnapped and held against [his] free will in mental institutions where [he has] been put in [four] point restraints unnecessarily, straight jackets unnecessarily, and stuck with needles in [his] buttocks against [his] will unnecessarily." (Compl. at 4 (emphasis omitted).) He states that this has occurred from 2009 to "current date 2026." (*Id.*) The Court notes that Cadell appears to have been ordered to undergo competency examinations in numerous state criminal cases, as recently as June 2026. *See Commonwealth v. Cadell*, Nos. CP-46-MD-0002188-2026, CP-46-MD-0001411-2026, CP-46-CR-0000598-2025, CP-46-CR-0004919-2010 (C.P. Montgomery).

Third, Cadell asserts that in "2024 after Covid," "Ice Agents illegally came to [his apartment] on 5009 N. 9th St., where unnecessary force [and] police presence was used in an illegal or false eviction that was conducted by a landlord that goes by the name Irene Goldstein." (Compl. at 4.) Elsewhere in his Complaint, he refers to these Defendants as "Isis Agents." (*See id.* at 1, 3.) The Court notes that Cadell and a co-occupant were defendants in a landlord-tenant action brought by Irina Goldstein in 2024 that appears to have resulted in their court-ordered

2

eviction from 5009 North 9th Street, Unit B.  *See Goldstein v. Cadell*, No. LT-24-10-17-4650 (Phila. Mun. Ct.).

Cadell asserts that he has "a lot of trauma and mental damage from these experiences[,] slight paranoia[, and] the feeling of being a prisoner in [his] own life."  (Compl. at 5.)  For relief, he asks for "someone to find [his] daughter . . . and give [them] a settlement that provides safety[,] security and stability."  (*Id.*)

## II.    STANDARD OF REVIEW

Because it appears that Cadell is incapable of paying the fees to commence this civil action, the Court will grant leave to proceed *in forma pauperis*.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss Cadell's Complaint if it fails to state a claim. The Court applies the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), that is, whether a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in the Plaintiff's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim."   *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *See Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.").

As Mr. Cadell is proceeding *pro se*, the Court construes the allegations in the Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* An unrepresented litigant "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.*

The Court must also review the pleadings and dismiss the matter if it determines that the action fails to set forth a proper basis for this Court's subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).

## III.    DISCUSSION

Cadell's Complaint fails to state any claim to relief. First, he asserts that he is invoking this Court's diversity jurisdiction but has not met his burden. Under 28 U.S.C. § 1332(a), district courts have jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'"

4

*Lincoln Benefit Life Co.*, 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  As stated, the plaintiff has the burden of pleading the existence of the court's jurisdiction, *see* Fed. R. Civ. P. 8, and "in a diversity action, the plaintiff must state all parties' citizenships such that the existence of complete diversity can be confirmed." *Craven v. Leach*, 647 F. App'x 72, 75 (3d Cir. 2016) (*per curiam*) (quoting *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.,* 177 F.3d 210, 222 n. 13 (3d Cir. 1999)).  Caddell provides only Pennsylvania addresses for himself and all three entities named as Defendants.  (*See* Compl. at 1, 3.)  Although he also indicates that he is a citizen of Washington, D.C., (*see id.* at 4), that assertion is at odds with his Pennsylvania address and the history of events in Pennsylvania that he details in his factual allegations.  Moreover, he makes no specific assertion about the amount in controversy, that is, the amount of money damages that he seeks.  Accordingly, Cadell has not provided sufficient support for the Court's diversity jurisdiction.

To the extent that Cadell's Complaint might be liberally construed to invoke the Court's federal question jurisdiction by bringing claims under the Constitution or laws of the United States pursuant to 42 U.S.C. § 1983, he also fails to state a claim to relief.  His claims against the Police District suffer from multiple defects.  First, following the decision in *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978), courts concluded that a police department is a sub-unit of the local government and, as such, is merely a vehicle through which the municipality fulfills its policing functions.  *See, e.g.*, *Johnson v. City of Erie*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993).  Thus, while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not.  *Id.*; *Martin v. Red Lion Police Dep't*, 146 F. App'x. 558, 562 n.3 (3d Cir. 2005) (*per curiam*) (stating that police department is not a proper defendant in

5

an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality); *Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 (3d Cir. 1997) ("As in past cases, we treat the municipality and its police department as a single entity for purposes of section 1983 liability." (citing *Colburn v. Upper Darby Township*, 838 F.2d 663, 671 n.7 (3d Cir. 1988)); *Hadesty v. Rush Twp. Police Dep't*, No. 14-2319, 2016 WL 1039063, at *9 n.4 (M.D. Pa. Mar. 15, 2016). Therefore, the Police District is not a proper defendant in this case under § 1983 and any claims against it must be dismissed.

Moreover, regardless of whom Cadell named as a Defendant, any claims related to his 2016 arrest and subsequent detention are untimely. The timeliness of a § 1983 claim is governed by the limitations period applicable to personal injury actions of the state where the cause of action arose. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). The Pennsylvania statute of limitations for a personal injury action is two years. *Id.* at 634 (citing 42 Pa. Cons. Stat. § 5524(2)). Cadell filed this case in 2026, so any claim related to events in 2016 is untimely on its face.

Cadell also cannot state a § 1983 claim against Norristown State Hospital ("NSH"). The Eleventh Amendment bars suits against a state and its agencies in federal court when the state has not waived that immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989). The Commonwealth of Pennsylvania has not waived that immunity for civil rights claims. *See* 42 Pa. Cons. Stat. § 8521(b). Since NSH "is a state institution within the Department of Public Welfare, . . . [it is] an arm of the state entitled to Eleventh Amendment immunity." *Matthews v. Norristown State Hosp.*, 528 F. App' x 115, 118-19 (3d Cir. 2013) (*per curiam*) (citing, *inter alia*, *Temple Univ. v. White*, 941 F.2d 201, 214 (3d Cir. 1991)). Accordingly, NSH is not subject to liability for damages under § 1983 and will be dismissed as a

Defendant.  However, in an abundance of caution, the Court will grant Cadell an opportunity to file an amended complaint that identifies specific individual defendants who were personally involved in any mistreatment he purportedly suffered while housed at NSH.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs [to be liable]."); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

Finally, Mr. Cadell has not stated any claim related to his eviction.  He refers to "Ice" or "Isis" Agents as the Defendants for this claim.  To the extent he intended to name agents of the United States Immigration and Customs Enforcement, commonly referred to as "ICE," he provides no facts about why those agents would have been involved in his eviction.  Instead, he merely appears to dispute the validity of his eviction as "illegal or false."  (Compl. at 4.)  As noted above, it appears that Cadell was evicted from the property pursuant to a judgment of the Philadelphia Municipal Court.  *See Goldstein v. Cadell*, No. LT-24-10-17-4650 (Phila. Mun. Ct.) To the extent that he seeks to challenge the decision of the state court or seeks damages for a purported injury arising out of the judgment rendered by the state court, the Court lacks jurisdiction over such claims.  *See T. M. v. Univ. of Md. Med. Sys. Corp.*, 608 U.S. ---, 146 S. Ct. 1739, 1744 (2026) ("Under . . . the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005); and citing *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983))).

Accordingly, any claims related to Cadell's eviction will be dismissed without prejudice for lack of jurisdiction and without leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Cadell's Motion for Leave to Proceed *In Forma Pauperis* and dismiss his Complaint on statutory screening, pursuant to 28 U.S.C. § 1915. The Court concludes that any attempt to amend his claims related to his 2016 arrest or his eviction would be futile, so he will not be granted leave to amend those claims. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002). Cadell will be granted leave to file an amended complaint as to his conditions of confinement at NSH and identify individuals who had personal involvement in his claims. An appropriate order follows, with more information about amendment.

**BY THE COURT:**

**/s/ Gerald Austin McHugh**
**GERALD A. MCHUGH, J.**

8